**BEFORE THE UNITED STATES PANEL
ON MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| **IN RE: NATIONAL RIFLE** | § | |
| **ASSOCIATION BUSINESS** | § | |
| **EXPENDITURES LITIGATION** | § | |
| | § | **MDL Docket No. 2979** |
| | § | |
| | § | |
| | § | |

### ACKERMAN MCQUEEN, INC., ET AL.'S AMENDED MEMORANDUM OF LAW IN OPPOSITION TO THE NATIONAL RIFLE ASSOCIATION'S MOTION TO TRANSFER[1]

---

[1] The AMc Parties are filing this Amended Opposition pursuant to the Panel's November 19, 2020 Order.

## TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES .........................................................................................iii

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

  A.   The AMc Litigation................................................................................... 2

  B.   AMc Litigation Against Stinchfield........................................................... 7

  C.   Dell'Aquila Class Action Against the NRA. ............................................. 8

  D.   NRA Litigation Against the New York Attorney General........................... 9

III.    ARGUMENTS & AUTHORITIES ............................................................. 10

  A.   The Actions Do Not Share a Common Factual Core. ................................ 11

  B.   Consolidation Would Create Inefficiencies, Inconveniences, and Disruptions. ............ 14

  C.   Simple Alternatives to Centralization Can Be Easily Coordinated Among Parties....... 17

  D.   Consolidation Would Frustrate—and Be Frustrated by—Current Judicial Orders. ...... 18

IV.    PRAYER ....................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Goldman Phipps PLLC v. Gray, Ritter & Graham, P.C.*, Civil Action No. 2:13-CV-00049, 2013 U.S. Dist. LEXIS 36482 (S.D. Tex. Mar. 15, 2013) .................................................................. 9

*In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244 (J.P.M.L. 1969) . 19

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375 (J.P.M.L. 2016) ....................................................................................................................... 12

*In re Air Crash near Ellabell, Ga.*, 396 F. Supp. 3d 1357 (J.P.M.L. 2019) ................................. 12

*In re Air Crash over the S. Indian Ocea*n, 190 F. Supp. 3d 1358 (J.P.M.L. 2016) ...................... 12

*In re Alexsam, Inc. ('608 & '787) Patent & Contract Litig.*, 437 F. Supp. 3d 1374 (J.P.M.L. 2020)........................................................................................................................................ 12

*In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376 (J.P.M.L. 2011) ............................................................................................................... 11, 17

*In re Covidien Hernia Mesh Prods. Liab. Litig.*, MDL No. 2953, 2020 U.S. Dist. LEXIS 144439 (J.P.M.L. Aug. 7, 2020)..................................................................................................... *passim*

*In re CP4 Fuel Pump Mktg. Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365 (J.P.M.L. 2019) ................................................................................................. 15, 17, 19, 20

*In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d 1377 (J.P.M.L. 2010)........................................................................................................................................ 14

*In re Drowning Incident at Quality Inn Northeast, Washington, D. C., on May 3, 1974*, 405 F. Supp. 1304 (J.P.M.L. 1976) ................................................................................................. 12

*In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242 (J.P.M.L. 1978) ................................................................................................................................. 17, 18

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 268 F. Supp. 3d 1356 (J.P.M.L. 2017) ............................................................................................ 11

*In r: Facebook Use of Name And Likeness Litig.*, 816 F. Supp. 2d 1380 (J.P.M.L. 2011) .... 12, 14

*In re Family Dollar Stores, Inc.*, MDL No. 2939, 2020 U.S. Dist. Lexis 96105 (J.P.M.L Jun. 2, 2020)........................................................................................................................................ 12

*In re Fisher-Price Rock 'n Play Sleeper Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357 (J.P.M.L. 2019) ............................................................................................ 12

*In re Ford Motor Co*. F-150, 412 F. Supp. 3d 1355 (J.P.M.L 2019)........................................... 13

*In re Fout & Wuerdeman Litig.*, 657 F. Supp. 2d 1371 (J.P.M.L. 2009) ...................................... 11

*In re Gap, Inc., Covid-19 Lease Payment Litig.*, MDL No. 2960, 2020 U.S. Dist. LEXIS 183689 (J.P.M.L. Oct. 2, 2020).......................................................................................... 11, 16, 17, 18

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.,* 396 F. Supp. 3d 1374 (J.P.M.L. 2019)................................................................................................................................ 13

*In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*, 626 F. Supp. 2d 1355 (J.P.M.L. 2009)................................................................................................................................ 11

*In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353 (J.P.M.L. 2020) ........................ 16

*In re Interstate Medicaid Patients at Good Samaritan Nursing Ctr.*, 415 F. Supp. 3891 (J.P.M.L. 1976)................................................................................................................................ 11

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375 (J.P.M.L. 2013) ...................................................................................................... 16

*In re Narconon Drug Rehab. Mktg., Sales Practices & Prods. Liab. Litig.*, 84 F. Supp. 3d 1367 (J.P.M.L. 2015) ...................................................................................................................... 11

*In re Peruvian Rd. Litig.*, 380 F. Supp. 796 (J.P.M.L. 1974) ...................................................... 13

*In re Prevagen Prods. Mktg. & Sales Practices Litig.*, 437 F. Supp. 3d 1381  (J.P.M.L. 2020).. 17

*In re Radioshack Corp. "ERISA" Litig.*, 528 F. Supp. 2d 1348 (J.P.M.L. 2007) ........................ 13

*In re Skywest Airlines, Inc.*, 396 F. Supp. 3d 1363 (J.P.M.L. 2019)............................................ 12

*In re StockX Customer Data Sec. Breach Litig.*, 412 F. Supp. 3d 1363 (J.P.M.L. 2019)............. 12

*In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732 (J.P.M.L. 1975)............................................................................................................................ 12, 19

*In re Truecar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d 1353 (J.P.M.L. 2019) ......... 11, 17

*In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III)*, 804 F. Supp. 2d 1382 (J.P.M.L. 2011) ...................................................................................................................... 15

*In re Zeroclick, LLC*, 437 F. Supp. 3d 1362 (J.P.M.L. 2020)...................................................... 12

**Statutes**

28 U.S.C. § 1407 ............................................................................................................... *passim*

Ackerman McQueen, Inc. ("**AMc**"), Mercury Group, Inc., Henry Martin, Melanie Montgomery, William Winkler, and Jesse Greenberg (collectively, the "**AMc Parties**") hereby submit this Response in Opposition to the National Rifle Association's ("**NRA**") Motion to Transfer Cases for Coordinated or Consolidated Pre-Trial Proceedings (the "**Motion**") .

## I.    INTRODUCTION

Since early 2018, the NRA has embarked on a scorched-earth litigation strategy across the United States.  At the center of this "shoot-first, aim later" strategy is AMc, its former long-term partner that helped the NRA become the most powerful Second Amendment advocacy group in the Nation.  When the NRA knew its non-profit status may be called into question due to its own mismanagement and illegal acts by its executives living an opulent life at the expense of the NRA membership, NRA leaders and counsel created a strategy to falsely paint AMc and others as the scapegoats for its own bad acts.  Once again, the NRA seeks to portray itself as a victim.  Setting aside the blatant false statements and hyperbole, the Motion reflects the latest in a series of delay tactics, where it is now seeking to invoke the procedures of 28 U.S.C. § 1407 for improper purposes to prejudice and delay ongoing proceedings with a variety of opponents in the various forums.

Defining these four actions as centering on "how the NRA was spending its money" is insufficient to shoehorn the wide variety of claims, parties, and factual allegations into one centralized litigation.[2]  As set forth herein, the NRA's Motion should be denied for three independently sufficient reasons.  *First*, the parties, claims, and facts underlying the four actions do not arise from a common factual core.  *Second*, centralization does not serve the convenience of the parties and the witnesses.  *Third*, consolidation would create inefficiencies and unfairly disrupt and delay already scheduled discovery and trial schedules in the pending actions.  With

---

[2] *See* Memorandum of Law in Support of the NRA's Motion to Transfer ("**NRA Brief**").

only four actions and few parties with common counsel, there are alternatives to centralization. The New York's Office of the Attorney General ("**NYAG**"), AMc's counsel in three jurisdictions, and other litigants would be hampered and prejudiced by being thrown together, when the matters are distinctly different.  The NRA has not met its burden to show that centralization would promote any of the principles of 28 U.S.C. § 1407 and, as such, its Motion should be denied.

## II.     BACKGROUND

### A.  The AMc Litigation.

#### 1.  History Between the NRA and AMc.

AMc is a public-relations ("**PR**") and marketing company that formerly provided PR, crisis-management, marketing, event, and media services for the NRA for nearly forty years until the relationship was terminated in mid-2019.  In response to frustrations about the mainstream media expressed by the NRA's longtime Executive Vice President, Wayne LaPierre ("**LaPierre**"), AMc helped the NRA develop a digital branded media platform ("**NRATV**") to produce and house the NRA's dedicated content, which enabled the NRA to respond to breaking news in real time.

During their multi-decade relationship, the parties developed working arrangements, such as negotiating annual budgets covering a variety of tasks, and embodied their protocols in successive versions of a contract (the "**Services Agreement**").  LaPierre controlled the process and operated with full knowledge of the NRA's expenditures with AMc.[3]  The parties abided by these

---

[3] *See* **Ex. D** ¶¶ 3, 5, 10, 17 (MDL_APP 337-45) ("Mr. LaPierre and Mr. Phillips instructed numerous representatives of AMc to intentionally provide vague invoices with brief descriptions to the NRA because of Mr. LaPierre's confidentiality concerns."); **Ex. E** ¶¶ 3, 6-7, 17 (MDL_APP 347-54) ("both Mr. LaPierre and Mr. Phillips often reminded me and other AMc representatives to intentionally keep AMc's invoices to the NRA vague."); **Ex. F** ¶¶ 2, 5-10, 14, 16-17 (MDL_APP 357-65) ("Mr. LaPierre stated on numerous occasions that Mr. Brewer was the only person that was going to keep him out of jail."); **Ex. G** ¶¶ 11-14 (MDL_APP 370-72) ("[Mr. LaPierre] also told me during that same phone call that Mr. Brewer was going to be gone in 30-60 days because he was going to have everything resolved with the New York Attorney General.").[4] *See* **Ex. C-G**

---

protocols with minimal conflict for decades as the relationship flourished.  Given the transparency of the annual budgeting process, never in their long history did either party express mistrust of the other side's financial dealings—until LaPierre's problems at the NRA began to mount, and the NRA retained attorney William A. Brewer III ("**Brewer**") and his law firm, Brewer Attorneys & Counselors (the "**Brewer Firm**"), in March 2018.[4]

Brewer is the son-in-law of Angus McQueen, the late CEO of AMc, and the brother-in-law of Revan McQueen, AMc's current CEO, and has been a member of the family for over twenty years.[5]  Brewer promotes his law firm as one that also offers PR services in-house, making the Brewer Firm a direct competitor of AMc in the PR industry.[6]

The NRA, through the Brewer Firm, began conducting purported investigations and audits of AMc's records shortly after the Brewer Firm's retention—nearly a year before litigation even began.  Even in the earliest stages of its investigation, the Brewer Firm communicated with AMc's counsel, including Dorsey & Whitney LLP ("**Dorsey**"), as the parties coordinated the review of AMc's documents and interview of witnesses.

### 2.  The Virginia Action.

The NRA filed its first pretextual lawsuit against AMc in Virginia state court for the alleged refusal to turn over records during these purported audits in breach of the parties' Services

---

(MDL_APP 316-72).

[4] *See* **Ex. C-G** (MDL_APP 316-72).

[5] **Ex. I** ¶¶ 2, 5-6 (MDL_APP 429-31) (McQueen Decl.).

[6] *See id.* ¶ 3 (MDL_APP 430-31); *Public Affairs*, BREWER ATTORNEYS, https://www.brewerattorneys.com/the-art-of-advocacy (the firm "position[s] [its] clients to prevail both within and outside the courtroom" and "pioneered … an Issues & Crisis Management group"); William A. Brewer III, *Advocacy as Art: Lawyers Must Engage in Issues and Crisis Management*, TEXAS LAWYER (May 6, 2019); https://www.law.com/texaslawyer/2019/05/06/advocacy-as-artlawyers-must-engage-in-issues-and crisismanagement/?slreturn=20200013141434.

Agreement.[7]  The NRA then sued AMc again in Virginia in May 2019 for breach of fiduciary duty and a second breach-of-contract claim relating to allegations of "leaks," and a defamatory extortion narrative, claiming that AMc had conspired to overthrow LaPierre.[8]  Finally, the NRA filed a third lawsuit against AMc in September 2019 for return of its physical property.[9]

The three Virginia lawsuits were eventually consolidated into a single case (the "***Virginia Action***") and significant discovery was conducted by the parties.[10]  Due to the competitive nature of the Brewer Firm's PR services, the Virginia court entered a two-tier protective order, providing for both a "confidential" and "highly confidential" designation, which walled-off Brewer and his PR department from gaining access to AMc's highly confidential business information.[11]  In the Virginia Action, the NRA is represented by the Brewer Firm and AMc is represented by Dorsey.

### 3.  The Texas Action.

Concurrently with the Virginia Action, the NRA sued AMc in the Northern District of Texas in August 2019 (the "***Texas Action***"), ultimately lodging all claims previously alleged in the Virginia Action, along with new claims for intellectual property violations related to AMc's use of NRATV images on AMc's own website, as well as for fraud and breach-of-fiduciary-duty[12] against AMc and its individual executives for alleged instances of fraudulent billing and

---

[7] **Ex. A-3** (MDL_APP 043-58). Evidence shows that LaPierre intended to sue AMc before the audits had ever taken place.   *See* **Ex. A-4** (MDL_APP 059).

[8] **Ex. A-5** (MDL_APP 060-78).

[9] A third alleged breach of the Services Agreement. **Ex. A-6** (MDL_APP 079-91).

[10] *See, infra*, Section II.A.4.

[11] **Ex. H** at 41:6-42:22 (MDL_APP 414-15); **Ex. A-2** (MDL_APP 024-42).

[12] In a clear effort to make its case appear stronger than it really is, the NRA's Motion makes the blatant misrepresentation that "the NRA claims against Ackerman for fraud and breach of fiduciary duty recently withstood a motion to dismiss."  *See* NRA Brief at 3.  But AMc never filed a motion to dismiss these claims, but rather moved to dismiss the NRA's fraud claim against Mercury Group, Inc. (which was granted) and the breach-of-fiduciary-duty claims against AMc's individual executives (also granted).  *See* **Ex. A-7** (MDL_APP 092-120).

misrepresentations about NRATV analytics.[13]

Contrary to the NRA's assertion that the claims in the Texas Action all concern the "central issue of how the NRA was spending its money,"[14] not a single one of the claims alleged by either the NRA or AMc directly involves the issue of NRA spending. Rather, the only mention of NRA spending in AMc's pleadings relates to background information about expenses that the NRA incurred using AMc credit cards (and failed to provide receipts for), and the clear incentive it provided for the NRA to manufacture claims against AMc to deflect from political scrutiny regarding this spending.[15] Instead, the true "central issues" in the Texas Action vary widely and involve several different core factual inquiries. At its heart, the Texas Action is a breach of contract case relating to the NRA's failure to pay AMc for services rendered. To avoid its contractual obligations, the NRA preemptively manufactured false narratives against AMc, such as the use of the NRA's intellectual property, NRATV analytics, AMc's billing, budgeting, and record-keeping practices, and a fictional conspiracy to overthrow LaPierre, allegations that have repeatedly been squarely rejected by sworn testimony. The NRA's tortious actions have further resulted in AMc asserting claims based upon the NRA and its counsel's defamatory statements against AMc, LaPierre's false and fraudulent representations to AMc about future services, and the NRA's failure to pay for services rendered.[16]

---

[13] NRA Brief, Collins Decl., Ex. A. After the initial filing in August 2019, the NRA amended its pleadings in October 2019 to encompass these allegations, which is the current operative pleading.
[14] NRA Brief at 8. The NRA also claims the Texas Action will entail discovery regarding the "performance by various [AMc] executives of their fiduciary duties" in connection with the NRA. NRA Brief at 8. Yet, these fiduciary duty claims against the individual executives have already been dismissed in the Texas Action and therefore could hardly comprise a "central issue" of any action. **Ex. A-7** at 28 (MDL_APP 119) (dismissing both counts of the NRA's individual breach-of-fiduciary-duty claims against AMc's executives).
[15] NRA Brief, Collins Decl., Ex. B., at 83-84 ¶¶ 22-24, 92-93 ¶¶ 49-53.
[16] NRA Brief, Collins Decl., Ex. B.

The Northern District of Texas has already entered some key rulings in the Texas Action. Over the NRA's objections, an identical two-tier protective order was entered.[17]  In her order, Magistrate Toliver specifically recognized the Brewer Firm's intentional efforts to circumvent the Virginia protective order and found good cause to maintain the two-tier structure for all discovery in the Texas Action.[18]  In a separate order, the court in the Texas Action has also prohibited Brewer, individually, from participating in any hearing or trial against AMc.[19]  Aside from this prohibition, the NRA is represented by other members of the Brewer Firm, and AMc is represented by Dorsey.

### 4.  Status of Discovery and Scheduling Order.

Based on amendments to the pleadings in the Texas Action and the Virginia Action, the NRA and AMc's claims eventually mirrored each other across both forums.[20]  The Virginia court even ordered that all discovery from the Virginia Action could be used in the Texas Action,[21] including at least twelve depositions and thousands of documents produced by both parties.[22] Based on the identical claims, the Virginia state court stayed the Virginia Action pending the outcome of the Texas Action,[23] the NRA's sole pending suit against AMc (the "***AMc Litigation***").

Since April 2019, the NRA and AMc have conducted extensive discovery.  The NRA falsely claims that discovery in the AMc Litigation is still in its "early stages" and, even more bizarrely, asserts that only 3,000 documents have been produced across both the AMc Litigation

---

[17] **Ex. A-8** (MDL_APP 121-125).

[18] *Id.* at 4 (MDL_APP 124).

[19] **Ex. A-9** (MDL_APP 145).

[20] *Compare* **Ex. A-10** (MDL_APP 146-200) (NRA's Amended Complaint in the Virginia Action) *to* NRA Brief, Collins Decl., Ex. A (NRA's First Amended Complaint in the Texas Action).

[21] **Ex. A-11** (MDL_APP 201-03) (order permitting use of discovery from the Virginia Action in the Texas Action).

[22] **Ex. A** ¶¶ 5-7 (MDL_APP 002) (Mason Decl.).  In the Virginia Action, the NRA produced approximately 28,000 documents and AMc produced approximately 18,000.

[23] **Ex. A-12** (MDL_APP 204-06) (Order Granting Motion to Stay in the Virginia Action).

and the Stinchfield Litigation.[24]   Since April 2019, the parties have exchanged nearly 1,000 discovery requests in both forums and jointly produced over 250,000 documents.[25]   Although discovery remains ongoing, both parties have completed the vast majority of the production requested through written discovery.  The NRA further misrepresents that thirty-six third-party subpoenas are currently outstanding.  To date, less than ten third-party subpoenas are truly "outstanding" as the NRA asserts,[26] and none of these are relevant to the other three Actions.[27]

On October 5, 2020, the NRA and AMc submitted a joint status report in the Texas Action. Both parties requested a trial date in June 2021.[28]  On October 13, 2020, the federal court set the Texas Action for trial on September 7, 2021 with a June 1, 2021 discovery deadline.[29]

**B.  AMc Litigation Against Stinchfield.**

When the NRA severed ties with AMc in mid-2019, the NRA pulled the plug on NRATV, where AMc employee Grant Stinchfield ("*Stinchfield*") served as a host of "Stinchfield."[30]  With its funding cut, however, AMc was unable to fulfill its contracts with numerous NRATV personalities, including Stinchfield, who eventually had to be laid off.  Disgruntled at his loss of income, Stinchfield executed an affidavit for the NRA containing false statements about AMc and its executives.  On December 20, 2019, AMc sued Stinchfield for libel and business disparagement in the Northern District of Texas (the "*Stinchfield Litigation*").  AMc, as plaintiff in the Stinchfield Litigation, is represented by Dorsey.  Stinchfield is represented by the Brewer Firm.[31]  Unlike any

---

[24] NRA Brief at 11-12.
[25] **Ex. A** ¶ 2, 5-6, 8 (MDL_APP 001-03) (Mason Decl.).  *See also* two sworn statements by NRA counsel describing its production of 4,200 documents. **Ex. J** (MDL_APP 441-43); **Ex. K** (MDL_APP 444-49).
[26] NRA Brief at 12.
[27] **Ex. A** ¶ 8 (MDL_APP 002).
[28] **Ex. A-13** at 13 (MDL_APP 221).
[29] *See* NRA Brief, Collins Decl., Ex. D.
[30] *See* NRA Brief, Shaw Decl., Ex. A.
[31] *See* NRA Brief, Shaw Decl. ¶ 1.

issues in the AMc Litigation, the Stinchfield Litigation involves only whether Stinchfield executed a false affidavit and the extent of harm to AMc.  The NRA is not a party.

A different Northern District judge, Judge Starr, has been presiding over the Stinchfield Litigation since it began.  Nevertheless, based on the same concerns about the Brewer Firm, Judge Starr entered a substantially identical two-tier protective order to those issued in the AMc Litigation.[32]  Moreover, because the parties share common counsel, AMc's counsel has already conferred with Stinchfield's counsel and offered to coordinate their discovery efforts.[33]

Importantly, the Stinchfield Litigation is set for trial on May 17, 2021, and the discovery deadline is approaching (December 21, 2020).[34]  Thus, even if centralization were appropriate, which it is not, there would be no additional benefit to either party to the Stinchfield Litigation arising from coordination of the Actions as requested in this Motion.  To the contrary, consolidation would certainly interfere with the deadlines and trial in the Stinchfield Litigation.

## C.  Dell'Aquila Class Action Against the NRA.

In 2019, members of the NRA filed a class action lawsuit in the Middle District of Tennessee against the NRA for allegations of fraud relating to misrepresentations about how the NRA members' funds would be used (the "***Dell'Aquila Class Action***").[35]  Thus, while the NRA is the plaintiff in the AMc Litigation, and a non-party in the Stinchfield Litigation, in the Dell-Aquila Class Action, the NRA is the defendant.  The factual core of the Dell'Aquila Class Action will relate to the representations made by the NRA to its members and whether the NRA's use of member funds was consistent with those representations.  Neither of these inquiries is at issue in

---

[32] **Ex. B-1** (MDL_APP 284-306) (Protective Order, Stinchfield Litigation).
[33] **Ex. B** ¶ 4 (MDL_APP 282) (Vanderwoude Decl.); **Ex. B-3** (MDL_APP 315).
[34] *Id.* ¶ 5 (MDL_APP 282) (Vanderwoude Decl.).
[35] NRA Brief, Brewer Decl., Ex. A.

the AMc Litigation or the Stinchfield Litigation.[36]   Moreover, a scheduling order in the Dell'Aquila Class Action was only recently established on November 6, 2020, setting trial for some time in the summer of 2022, long after the discovery periods and trials of the AMc Litigation and Stinchfield Litigation will have concluded.[37]   AMc has no involvement in the matter.

### D.  NRA Litigation Against the New York Attorney General.

On August 6, 2020, the NYAG filed a lawsuit against the NRA in New York state court seeking dissolution of the NRA's New York charter ("***NYAG State Action***").[38]   That same day, the NRA sued the NYAG in the Northern District of New York for numerous civil rights violations related to free speech, free association, and equal protection ("***NYAG Federal Action***").[39]

The NRA makes much ado of the NYAG State Action against the NRA.[40]   Indeed, it is the primary factual focus of the Motion,[41] despite the fact that, as a state court matter, it is <u>not</u> one of the Actions that can be consolidated.[42]   Notwithstanding its arguments that the NYAG State Action is somehow a tag-along case under a strained "compulsory counterclaim" theory,[43] it is implausible that the NYAG's dissolution of the NRA's New York charter for financial malfeasance—clearly an issue of New York law to be decided by New York courts—would ever end up in federal court, much less in the Northern District of Texas.   Moreover, a group of NRA members in the NYAG

---

[36] *See* Chart of Claims, **Appendix B.**

[37] **Ex. L** (MDL_APP 450-54) (Dell'Aquila Class Action, Initial Case Management Order (Nov. 6, 2020)).

[38] NRA Brief, Rogers Decl., Ex. A.

[39] NRA Brief, Rogers Decl., Ex. B.

[40] NRA Brief at 1-6.

[41] *Id.*

[42] *See Goldman Phipps PLLC v. Gray, Ritter & Graham, P.C.*, No. 2:13-CV-00049, 2013 U.S. Dist. LEXIS 36482, at *5 (S.D. Tex. Mar. 15, 2013) ("That statute [28 U.S.C. § 1407] allows for the consolidation into multidistrict litigation of cases already pending in different federal district courts . . . Nothing about that procedural statute purports to confer jurisdiction over state law claims pending in state court.").

[43] NRA Brief at 5 n. 9.

State Action have recently asserted that the Brewer Firm has an irreconcilable conflict representing both the NRA and LaPierre, whose interests would be opposed if it were shown that LaPierre had breached his fiduciary duty to the organization as the NYAG claims.[44]

By contrast, the central issue in the NYAG Federal Action will focus solely on the conduct of the NYAG and whether it violated the NRA's civil rights.[45] Yet, naturally, Texas district courts would not normally have *in personam* jurisdiction over the NYAG in a matter like that. The Motion perhaps represents an effort on the part of the NRA to litigate the majority of that matter in a venue it perceives as politically "friendlier" to the NRA than New York.

As the NRA notes in its Motion, the NYAG has already begun an investigation of the NRA and many thousands of documents were produced during that initial investigation.[46] AMc and its counsel have already cooperated with the NYAG's investigation into the NRA, which can be easily coordinated again in the future as the need arises, especially because the Brewer Firm is the sole repository for NRA-related documents and Dorsey the sole repository for AMc-related documents.

## III.     ARGUMENTS & AUTHORITIES

The NRA's Motion should be denied because it does not meet the requirements, or serve the purposes, of 28 U.S.C. § 1407 and because simple, practical alternatives are available in lieu of consolidation. Transfer and centralization of related civil actions are permitted where (1) the actions "involv[e] one or more common questions of fact"; (2) transfer "will be for the convenience of parties and witnesses"; and (3) transfer "will promote the just and efficient conduct of such actions."[47] Moreover, centralization is appropriate only where it "is necessary in order to eliminate

---

[44] **Ex. A-15** (MDL_APP 246-280) (Ltr. from G. Douglas to Hon. J.M. Cohen (Nov. 11, 2020)).
[45] NRA Brief, Rogers Decl., Ex. B; Chart of Claims, **Appendix B**.
[46] NRA Brief at 12.
[47] 28 U.S.C. § 1407(a).

duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary."[48]

The movant bears the burden of demonstrating that centralization is appropriate.[49] Importantly, this Panel has repeatedly held that, where only a minimal number of actions are involved, the movant bears an even heavier burden to show that the benefits of centralization outweigh the disruption to the pending actions and the inconvenience to the parties whose action is being transferred.[50]  The movant should also attempt to make a showing of how informal means of coordination have been attempted, and failed, before resorting to panel intervention.[51]  In fact, centralization should be the "last solution" after all other options have been considered.[52]  Here, the NRA cannot meet the heavy burden to establish that centralization is appropriate.

## A.  The Actions Do Not Share a Common Factual Core.

Centralization is not appropriate in situations where individual fact issues predominate in the separate cases.[53]  Rather, all actions must arise from a "common factual core,"[54] such as those

---

[48] *In re Helicopter Crash Near Weaverville, Cal., on Aug. 5, 2008*, 626 F. Supp. 2d 1355, 1356 (J.P.M.L. 2009).

[49] *See, e.g.*, *In re Fout & Wuerdeman Litig.*, 657 F. Supp. 2d 1371, 1371 (J.P.M.L. 2009).

[50] *In re Covidien Hernia Mesh Prods. Liab. Litig.*, MDL No. 2953, 2020 U.S. Dist. LEXIS 144439, at *2 (J.P.M.L. Aug. 7, 2020); *In re Interstate Medicaid Patients at Good Samaritan Nursing Ctr.*, 415 F. Supp. 389, 391 (J.P.M.L. 1976).

[51] *See In re Gap, Inc., Covid-19 Lease Payment Litig.*, MDL No. 2960, 2020 U.S. Dist. LEXIS 183689, at *4-5 (J.P.M.L. Oct. 2, 2020); *In re Truecar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d 1353, 1354 (J.P.M.L. 2019).

[52] *See, e.g.*, *In re Gap, Inc.*, 2020 U.S. Dist. LEXIS 183689, at *4-5; *In re Covidien*, 2020 U.S. Dist. LEXIS 144439, at *2; *In re Best Buy Co., Inc., Cal. Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

[53] *See In re: Narconon Drug Rehab. Mktg., Sales Practices & Prods. Liab. Litig.*, 84 F. Supp. 3d 1367, 1368 (J.P.M.L. 2015) (denying consolidation of 21 actions because, even though the actions shared some common factual questions, discovery would involve too many case-specific facts to benefit from MDL centralization).

[54] *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359 (J.P.M.L. 2017) (consolidating five antitrust actions against manufacturers and distributers of a pharmaceutical product).

often found in product-liability actions, antitrust actions, consumer actions, employment actions, and voluminous personal-injury actions resulting from a single event, such as a plane crash.[55]

However, this Panel has held many times that the mere showing of common questions of fact between actions sought to be transferred is not sufficient to warrant transfer.[56]  Even where there is "general factual overlap among the actions," the proponent of centralization must show that "shared factual questions are sufficiently complex or numerous to justify centralization."[57] The NRA has failed to make this showing.

---

[55] *See, e.g.*, *In re Fisher-Price Rock 'n Play Sleeper Mktg., Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1357 (J.P.M.L. 2019) (centralizing ten product-liability class); *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375 (J.P.M.L. 2016) (centralizing eight consumer actions against related to false labeling); *In re Air Crash over the S. Indian Ocea*n, 190 F. Supp. 3d 1358 (J.P.M.L. 2016) (centralizing eight actions resulting from plane crash).  *But cf. In re Air Crash near Ellabell, Ga.*, 396 F. Supp. 3d 1357, 1357-58 (J.P.M.L. 2019) (finding centralization not necessary for "only four actions, brought by two plaintiff groups, in two districts, with no indication of more to come" even though the actions shared factual issues because "[t]he small number of involved actions, minimal number of districts, and relatively few parties suggest that informal coordination and cooperative efforts" by the courts and counsel was "practicable and preferable" to centralization); *In re Skywest Airlines, Inc.*, 396 F. Supp. 3d 1363, 1363-64 (J.P.M.L. 2019) (despite common factual questions, the Panel ruled against centralization because it found the three actions not complex with few involved counsel and because plaintiffs' counsel represented its willingness to coordinate on discovery and other pretrial matters.).

[56] *See In re Alexsam, Inc. ('608 & '787) Patent & Contract Litig.*, 437 F. Supp. 3d 1374, 1376 (J.P.M.L. 2020) (panel denied transfer in action by single patent-holder against five defendants for patent-infringement claims because, although actions possessed "a degree of factual commonality," different claims, defendants, and key facts were present in each case); *In re Drowning Incident at Quality Inn Northeast, Washington, D. C., on May 3, 1974*, 405 F. Supp. 1304 (J.P.M.L. 1976) (panel denied transfer in action against different defendants arising from the same drowning incident); *In re Truck Acc. Near Alamagordo, New Mexico, on June 18, 1969*, 387 F. Supp. 732 (J.P.M.L. 1975) (denying transfer despite "common if not identical" questions of fact because informal alternatives to consolidation were available).

[57] *In re: Facebook Use of Name And Likeness Litig.*, 816 F. Supp. 2d 1380 (J.P.M.L. 2011) (denying transfer and centralization of three class actions against common defendant because, although discovery in all actions would involve common fact questions, individual fact issues would predominate, and the shared factual questions were not complex or numerous); *see also In re Zeroclick, LLC*, 437 F. Supp. 3d 1362, 1362 (J.P.M.L. 2020); *In re Family Dollar Stores, Inc.*, MDL No. 2939, 2020 U.S. Dist. Lexis 96105, at *2 (J.P.M.L Jun. 2, 2020); *In re StockX Customer Data Sec. Breach Litig.*, 412 F. Supp. 3d 1363, 1364 (J.P.M.L. 2019).

---

As discussed above and in the Chart of Claims, the four Actions the NRA seeks to consolidate have very little in common.[58]  Nevertheless, the NRA makes the creative (but legally and factually incorrect) assertion that "*how the NRA was spending its money*" is a "*central issue*" to all Actions.[59]  The NRA cites several cases for the proposition that common questions of fact require consolidation.[60]  However, every case the NRA cited involves a distinguishable situation where the movant sought to consolidate multiple cases against a single <u>defendant</u>,[61] or where the movant was a single <u>plaintiff</u> against numerous defendants.[62]  The other cases the NRA cited where the Panel granted the request for centralization involved parties who agreed to consolidate or cases involving a vastly greater number of parties or a significantly more complex discovery protocol.[63]

Here, the NRA did not cite a single case similar to the situation underlying this Motion with the disparity in legal claims or procedural posture—where there are literally no overlapping legal claims, or where the movant simultaneously appears in the posture of <u>plaintiff</u>, <u>defendant</u>, and <u>non-party</u> in the actions it seeks to centralize.[64]  Moreover, unlike the NRA's authority, there is no agreement regarding centralization, and all non-movants are opposed.[65]

---

[58] *See* Chart of Claims, **Appendix B**.

[59] NRA Brief at 8.

[60] NRA Brief at 8 n. 18, 14 n. 55.

[61] *See In re MI Windows & Doors, Inc., Prod. Liab. Litig.*, 857 F. Supp. 2d 1374, 1375 (J.P.M.L. 2012) (common defendant facing multiple plaintiffs alleging similar breach-of-contract claims); *In re Radioshack Corp. "ERISA" Litig.*, 528 F. Supp. 2d 1348, 1349 (J.P.M.L. 2007) (multiple claims by employees against single employer); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, 323 F. Supp. 2d 1381, 1383 (J.P.M.L. 2004) (single defendant against multiple plaintiff alleging damages from defective product).

[62] *See In re Peruvian Rd. Litig.*, 380 F. Supp. 796, 798 (J.P.M.L. 1974) (cases by single plaintiff related to one construction project).

[63] *See In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 396 F. Supp. 3d 1374, 1374-75 (J.P.M.L. 2019); *In re Ford Motor Co. F-150*, 412 F. Supp. 3d 1355, 1355-56 (J.P.M.L 2019); *In re IDT Corp. Calling Card Terms Litig.*, 278 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2003).

[64] *See* Chart of Claims, **Appendix B**.

[65] *See, e.g., In re MI Windows & Doors*, 857 F. Supp. 2d at 1375.

Although there may be some similarities or general references to similar facts, *i.e.*, a "common factual core," between the Dell'Aquila Class Action and the NYAG <u>State</u> Action concerning whether the NRA officers misappropriated member funds, the NYAG State Action is not eligible for consolidation in this matter regardless of how much those facts may overlap.[66]  The NRA is simply trying to use the NYAG State Action to create the appearance of a common factual core where none exists.  The federal cases are simply too different to be consolidated:

- The AMc Litigation concerns the conduct of <u>AMc</u> as against <u>the NRA</u>.

- AMc's counterclaims concern the conduct of <u>the NRA and LaPierre</u> as against <u>AMc</u>.

- The Stinchfield Litigation concerns the conduct of <u>Stinchfield</u> as against <u>AMc</u>.

- The Dell'Aquila Class Action concerns the conduct of <u>the NRA officers</u> as against <u>its members</u>.

- The NYAG Federal Action concerns the NRA's allegations of misconduct of <u>the NYAG</u> as against <u>the NRA</u>.[67]

The mere fact that the Actions might share some general factual overlap regarding the background relationship between the NRA and AMc is insufficient without a showing that the issues are sufficiently numerous or complex to justify centralization,[68] especially in a circumstance such as this one where the number of cases to be consolidated is so small (only four).[69]

## B.  Consolidation Would Create Inefficiencies, Inconveniences, and Disruptions.

Even in situations where actions do contain one or more common questions of fact, the

---

[66] *See* 28 U.S.C. § 1407(a) (providing for centralization and transfer of actions only in federal district courts).  *See also In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d 1377, 1379 (J.P.M.L. 2010) (centralization "less convincing" when "only a few or procedurally dissimilar cases were involved").

[67] *See* Chart of Claims, **Appendix B**.

[68] *See In re Facebook*, MDL No. 2288, 2011 WL 4684354, at *1 (denying transfer when nothing more than background facts overlapped).

[69] *See In re Covidien*, 2020 U.S. Dist. LEXIS 144439, at *2-3 (Panel considered "minimal" and denied transfer of twelve cases spread across nine districts and held movant to higher standard).

Panel must also find that transfer "will be for the convenience of parties and witnesses" *and* "will promote the just and efficient conduct" of the actions.[70]   In cases with multiple plaintiffs or defendants and distinct theories of liability, there is a "usual reluctance" to consolidate due to the likelihood of prolonging pretrial proceedings and disrupting the pending actions in a manner that is both a burden to the transferee court and the parties.[71]   Furthermore, whether the non-movants oppose the transfer and centralization is one factor considered by the Panel, opposition making centralization a "less convincing" option for the Panel.[72]

In light of the wide variety of claims and factual inquiries involved in the Actions, along with disparate procedural positioning of the NRA and AMc as plaintiff, defendant, and non-parties in the various actions, the NRA's Motion makes no showing of how any possible benefits of centralization would outweigh the obvious disruption to the two actions pending in the Northern District of Texas,[73] both of which would be highly likely to lose their upcoming trial settings.

In negotiating the joint disclosures related to the scheduling order for the AMc Litigation, counsel for the NRA represented that it could be ready for trial as early as June 2021.[74]   Yet now, the NRA is apparently seeking a backdoor continuance of the AMc Litigation, along with the

---

[70] 28 U.S.C. § 1407.

[71] *See, e.g.*, *In re CP4 Fuel Pump Mktg. Sales Practices, & Prods. Liab. Litig.*, 412 F. Supp. 3d 1365, 1367 (J.P.M.L. 2019) (holding consolidation would result in "significant inefficiencies and delays, without producing any substantial offsetting benefits"); *see also In re Hartford Covid-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2963, 2020 U.S. Dist. LEXIS 183685, at *3-4 (J.P.M.L. Oct. 2, 2020) ("Efficiency here is best obtained outside the MDL context. If these actions were centralized, the transferee court would have to establish a pretrial structure to manage numerous plaintiffs, many of which are pursuing distinct theories of liability.").

[72] *See In re Wells Fargo Wage and Hour Emp't Practices Litig. (No. III)*, 804 F. Supp. 2d 1382, 1384 (J.P.M.L. 2011); *In re CVS Caremark Corp. Wage & Hour Empl. Practices Litig.*, 684 F. Supp. 2d at 1379 (centralization is "less convincing" when some of the parties oppose centralization or "only a few or procedurally dissimilar cases were involved").

[73] *See In re Covidien*, 2020 U.S. Dist. LEXIS 144439, at *2.

[74] **Ex. A-13** at 13 (MDL_APP 221).

---

Stinchfield Litigation, based on an entirely unrelated case by the NYAG in New York State and the NRA's elective civil-rights lawsuit it brought in response. Moreover, the NRA made no effort to show how the issues were so complex, or discovery so time-consuming, that consolidation was the best option.[75] Indeed, the discovery period in the Stinchfield Litigation is nearly over and an extensive amount of discovery has already been completed in the AMc Litigation.[76] The NRA's Motion does nothing more than make bare allegations that consolidation would "eliminate duplicative discovery" without demonstrating how or why this might be true, and asks the Panel to overlook the significant discovery that has already occurred (without centralization).[77]

In further attempting to support the element of "just and efficient conduct" enabled by consolidation, the NRA makes reference to the possibility of "tag-along" actions that might arise in the future.[78] However, the "mere possibility" of tag-along actions, without more, is not a factor the Panel considers in support of consolidation.[79]

The NRA has failed to make any showing that consolidation of the Actions in the Northern District of Texas would do anything but delay the AMc Litigation and Stinchfield Litigation trial settings and inconvenience the Dell'Aquila plaintiffs, the NYAG, and, most importantly, the transferee court as it could be challenged to monitor and oversee discovery in these vastly different

---

[75] *See In re Covidien*, 2020 U.S. Dist. LEXIS 144439, at *2.

[76] **Ex. B** ¶ 5 (Vanderwoude Decl.).

[77] NRA Brief at 14. Although the NRA is the plaintiff in the AMc Litigation, it has not attempted to take depositions in any meaningful manner for nearly a year.

[78] *Id.*

[79] *See In re Gap, Inc.,* 2020 U.S. Dist. LEXIS 183689, at *4; *In re Covidien*, 2020 U.S. Dist. LEXIS 144439, at *3; *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig.*, 959 F. Supp. 2d 1375, 1376 (J.P.M.L. 2013); *In re Hotel Indus. Sex Trafficking Litig.*, 433 F. Supp. 3d 1353, 1356 (J.P.M.L. 2020) ("Plaintiffs also assert that the number of actions is likely to expand substantially, referring to potentially 1,500 additional actions. But the mere possibility of additional actions does not support centralization, even where thousands of actions are predicted. Moreover, our decision to deny centralization in this matter is not based on an insufficient number of actions, but rather the lack of common factual questions in this litigation.").

actions with different legal theories and facts.  Because transfer and consolidation would not promote the "just and efficient" conduct of these Actions, the NRA's Motion should be denied.

## C.  Simple Alternatives to Centralization Can Be Easily Coordinated Among Parties.

As this Panel has often held, "centralization under Section 1407 should be the last solution after considered review of all other options."[80]  The movant should make a showing of the prior efforts to coordinate discovery informally before seeking relief from the Panel.[81]  Informal coordination methods include: (1) deposition notices filed in all actions; (2) stipulations that discovery relevant to more than one action may be used in all actions; (3) orders from the current courts directing the parties to coordinate their pretrial efforts; and (4) if the claims were truly overlapping, stays of actions in certain courts pending outcome of other actions.[82]  Further, when the parties are represented by common counsel, informal coordination is made even easier and the risk of redundant discovery reduced—a factor that further weighs against centralization.[83]

The NRA made *no showing* of how or why informal coordination efforts were not feasible, and *failed to inform* the Panel of the coordination efforts that have already occurred.  Nevertheless, AMc has already demonstrated that it is willing and able to coordinate informally with all other parties in situations where common discovery might be needed.  For instance, AMc has

---

[80] *See, e.g.*, *In re Best Buy Co., Inc.*, 804 F. Supp. 2d at 1378.

[81] *See In re Truecar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d at 1354 (refusing to centralize when movant had not explored the option of informal coordination as an alternative to centralization).

[82] *See In re Eli Lilly & Co. (Cephalexin Monohydrate) Patent Litig.*, 446 F. Supp. 242, 244 (J.P.M.L. 1978) (listing various methods for minimizing duplicative pretrial proceedings); *see also In re Gap, Inc.,* 2020 U.S. Dist. LEXIS 183689, at *4-5; *In re Prevagen Prods. Mktg. & Sales Practices Litig.*, 437 F. Supp. 3d 1381, 1382 (J.P.M.L. 2020); *In re Truecar, Inc., S'holder Derivative Litig.*, 412 F. Supp. 3d at 1354.

[83] *See In re Covidien Hernia Mesh Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 144439, at *3-4; *In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1366; *In re SLB Enter. Rico Litig.*, 412 F. Supp. 3d 1350, 1351-52 (J.P.M.L. 2019); *In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1394 (J.P.M.L. 2014).

coordinated with the NYAG's investigation into the NRA.[84]  Counsel for AMc has also attempted to coordinate documents produced in the Stinchfield Litigation for use in the AMc Litigation despite the NRA and the Brewer Firm's refusal thus far.[85]  To the extent that any factual issues overlap, AMc is willing to continue to coordinate with the NYAG and the Dell'Aquila plaintiffs, as the need arises.[86]  And certainly, AMc can continue coordinating with the NRA's counsel, as it has been doing for over two years.  Plus, depositions could potentially be cross-noticed to the extent appropriate.[87]  Moreover, if the NRA truly believes any claims overlap, it would in large part be due to the Brewer Firm's insistence on its cross-country litigation strategy to financially oppress its opponents into submission.[88]  The NRA is represented by a single law firm that has spearheaded the NRA's vexatious litigation strategy since early 2018 and, through this Motion, is effectively seeking to unwind the litigious web it has woven.[89]  Regardless, even if claims actually overlap (they do not), the NRA may move to stay certain actions pending the outcome of others, as has been done relating to the Texas Action (namely, the staying of the Virginia Action).[90]

In sum, the parties have already demonstrated their ability to work together to coordinate discovery, and numerous informal alternatives exist to the onerous relief the NRA seeks.

## D.  Consolidation Would Frustrate—and Be Frustrated by—Current Judicial Orders.

Finally, the Panel is typically "hesitant" to centralize cases when the need to protect trade

---

[84] **Ex. A** ¶ 9 (MDL_APP 003) (Mason Decl.).

[85] *See* **Ex. B** ¶ 4 (MDL_APP 282) (Vanderwoude Decl.).

[86] **Ex. A** ¶ 9 (MDL_APP 003) (Mason Decl.).

[87] *See, e.g.*, *In re Gap, Inc.*, 2020 U.S. Dist. LEXIS 183689, at *4-5; *In re Eli Lilly*, 446 F. Supp. at 244.

[88] *See In re Snider*, 437 F. Supp. 3d 1371, 1372 (J.P.M.L. 2020) ("Additionally, plaintiff appears to seek centralization for an improper purpose – that is, to fix a perceived mistake in how he filed his actions and to avoid a court he perceives as 'hostile' to his claims").

[89] Attached as **Appendix A** is a list of all litigation and arbitration the NRA filed or in which the NRA been named as a defendant since May 2018.

[90] *See In re Eli Lilly*, 446 F. Supp. at 244.

secrets and confidential information would complicate case management.[91]  Further, transfer will

be denied when it appears that the movant's request is made for an "ulterior motive" instead of the

designed purposes of Section 1407.[92]  Brewer is lead counsel in the NYAG Federal Action, and

the NRA has admitted in prior filings that Brewer oversees all of the NRA's litigation.[93]

Here, in addition to the factors discussed above, consolidation is made further impractical

due to three judicial orders already in place in the Northern District of Texas.  *First*, the AMc

Litigation and Stinchfield Litigation have two-tier protective orders in place.[94]  These protective

orders were customized for those actions, first in the Virginia Action, then in the two Northern

District courts, due to the uniquely competitive relationship between AMc and the Brewer Firm,

both of whom provide PR, crisis-management, and speech-writing services.[95]  These orders enable

AMc to designate certain business information as "highly confidential," thereby preventing

Brewer and his PR department from accessing it.  Consolidation of the Actions would likely

eviscerate these protective orders and complicate the management of documents and discovery.

*Second*, based on the family relationship between Brewer and AMc's CEO and on

Brewer's status as a competitor, Brewer himself has been prohibited from appearing on behalf of

the NRA or at any hearing or trial in the AMc Litigation.[96]  If these Actions were consolidated,

this prohibition would become largely meaningless and could threaten the protection of AMc's

---

[91] *See In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367.

[92] *See In re "East of the Rockies" Concrete Pipe Antitrust Cases*, 302 F. Supp. 244, 255-256 (J.P.M.L. 1969) (Weigel, J., concurring); *In re Alamagordo Truck Accident*, 387 F. Supp. at 734.

[93] *See* NRA Brief, Rogers Decl., Ex. B; **Ex. A-14** at 1 (MDL_APP 230) ("The dispute centers on Defendants' efforts to attempt to disqualify indirectly the NRA's lead litigation counsel, Mr. William Brewer III, from this case . . .").

[94] *See* **Ex. A-8** (MDL_APP 121-125); **Ex. B-1** (MDL_APP 284-306).

[95] *See* **Ex. C** at ¶ 3 (MDL_APP 317) (describing services provided by AMc); Public Affairs, Brewer Attorneys, https://www.brewerattorneys.com/the-art-of-advocacy (last visited Nov. 10, 2020) (describing PR services provided by the Brewer Firm).

[96] *See* **Ex. A-9** at 20 (MDL_APP 145).

confidential information.   Alternatively, centralization would unnecessarily complicate the transferee court's attempt to incorporate these additional orders into its case-management efforts.[97]

Finally, it is inconceivable that, after two years of their "spectator sport" litigation approach and after numerous reports establishing that the NRA has paid the Brewer Firm tens of millions of dollars, the NRA and Brewer Firm would *now* be concerned with efficiencies or conveniences for the parties, witnesses, or courts.   Centralization in this matter would benefit no one but the NRA, its counsel, and their vexatious litigation strategy, and as such, the Motion should be denied.

## IV.    PRAYER

For the reasons stated herein, centralization is not necessary for the convenience of the parties and witnesses or to further the just and efficient conduct of any of the Actions.   The AMc Parties respectfully request that the Panel deny the NRA's Motion.

---

[97] *See In re CP4 Fuel Pump*, 412 F. Supp. 3d at 1367.

Dated: November 20, 2020.

Respectfully submitted,

*/s/ G. Michael Gruber*

**G. Michael Gruber, Esq.**
Texas Bar No. 08555400
gruber.mike@dorsey.com
**Jay J. Madrid, Esq.**
Texas Bar No. 12802000
madrid.jay@dorsey.com
**J. Brian Vanderwoude, Esq.**
Texas Bar No. 24047558
vanderwoude.brian@dorsey.com
**Brian E. Mason, Esq.**
Texas Bar No. 24079906
mason.brian@dorsey.com
**DORSEY & WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile

**ATTORNEYS FOR AMc PARTIES**

## PROOF OF SERVICE

In compliance with Rule 4.1(a) of the Rules of Procedure for the United States Judicial Panel on Multidistrict Litigation, I hereby certify that copies of the foregoing Memorandum of Law in Opposition to the NRA's Motion to Transfer was served electronically via ECF on all parties in all involved actions, on November 18, 2020.

*/s/ G. Michael Gruber*
G. Michael Gruber, Esq.